**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF IOWA**
**EASTERN DIVISION**

| | |
|---|---|
| NICOLE CHURCH, individually and on behalf of all others similarly situated, | INDEX NO.: |
| *Plaintiff*, | **CLASS ACTION COMPLAINT** |
| v. | **JURY DEMAND** |
| LEE ENTERPRISES INCORPORATED, | |
| *Defendant*. | |

**PLAINTIFF'S CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Nicole Church ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint ("Complaint") against Defendant, Lee Enterprises Incorporated, ("Lee Enterprises" or "Defendant"), to obtain damages, restitution, and injunctive relief for the Class, as defined below, from Defendant. Plaintiff makes the following allegations upon information and belief, except as to her own actions, the investigation of her counsel, and the facts that are a matter of public record.

## I.    INTRODUCTION

1.    This class action arises out of the recent data security incident and data breach that was perpetrated against Defendant (the "Data Breach"), which held in its possession certain personally identifiable information ("PII") (collectively, the "Private Information") of its current and former employees, the putative class members ("Class"). This Data Breach occurred on or around February 1, 2025.

2.    Defendant Lee Enterprises is an Iowa for profit corporation that operates as a media

company that provides local news, information, and advertising in 72 markets and 25 states.[1]

3.     The Private Information compromised in the Data Breach included certain PII of Defendant's current and former employees, including Plaintiff. This Private Information included but is not limited to "name and Social Security numbers" *See* Notice of Data Breach, attached hereto as Exhibit A.

4.     The Private Information was acquired by cyber-criminals who perpetrated the attack and remains in the hands of those cyber-criminals. According to Defendant's report to the The Office of the Maine Attorney General, that 39,779 individuals' sensitive data was compromised.[2]

5.     The Data Breach resulted from Defendant's failure to implement adequate and reasonable cyber-security procedures and protocols necessary to protect individuals' Private Information with which they were entrusted for entering into an agreement for employment.

6.     Plaintiff brings this class action lawsuit on behalf of those similarly situated to address Defendant's inadequate safeguarding of Class Members' Private Information that they collected and maintained, and for failing to provide timely and adequate notice to Plaintiff and other Class Members that their information was subjected to unauthorized access by an unknown third party and precisely what specific type of information was accessed.

7.     Defendant maintained the Private Information in a reckless manner. In particular, the Private Information was maintained on Defendant's computer network in a condition vulnerable to cyberattacks. Upon information and belief, the mechanism of the Data Breach and potential for improper disclosure of Plaintiff's and Class Members' Private Information was a

---

[1] Lee Enterprises, Inc., About  – available at: Https://www.lee.net/about/  (last visited June 13, 2025).
[2] The Office of the Maine Attorney General *available at* https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/6d65c2ef-7b28-4bc7-8e86-983c6d2a5e4f.html (*last accessed* June 13, 2025).

known risk to Defendant, and thus Defendant was on notice that failing to take steps necessary to secure the Private Information from those risks left that property in a dangerous condition.

8.     Defendant, through its employees, disregarded the rights of Plaintiff and Class Members (defined below) by, among other things, intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure its data systems were protected against unauthorized intrusions. Defendant also failed to disclose that it did not have adequately robust computer systems and security practices to safeguard Plaintiff's and Class Members' Private Information and failed to take standard and reasonably available steps to prevent the Data Breach.

9.     In addition, Defendant's employees failed to properly monitor the computer network and systems that housed the Private Information. Had Defendant's employees (presumably in the IT department) properly monitored its property; it would have discovered the intrusion sooner.

10.    Plaintiff's and Class Members' identities are now at risk because of Defendant's negligent conduct since the Private Information that Defendant collected and maintained is now in the hands of data thieves.

11.    Armed with the Private Information accessed in the Data Breach, data thieves can commit a variety of crimes. These crimes include opening new financial accounts in Class Members' names, taking out loans in Class Members' names, using Class Members' information to obtain government benefits, filing fraudulent tax returns using Class Members' information, filing false medical claims using Class Members' information, obtaining driver's licenses in Class Members' names but with another person's photograph, and giving false information to police during an arrest.

12.     Because of the Data Breach, Plaintiff and Class Members have been exposed to a heightened and imminent risk of fraud and identity theft. Plaintiff and Class Members must now and in the future closely monitor their financial accounts to guard against identity theft.

13.     Plaintiff and Class Members may also incur out of pocket costs for, *e.g.*, purchasing credit monitoring services, credit freezes, credit reports, or other protective measures to deter and detect identity theft.

14.     Through this Complaint, Plaintiff seeks to remedy these harms on behalf of herself and all similarly situated individuals whose Private Information was accessed during the Data Breach.

15.     Plaintiff seeks remedies including, but not limited to, compensatory damages, reimbursement of out-of-pocket costs, and injunctive relief including improvements to Defendant's data security systems, future annual audits, and adequate credit monitoring services funded by Defendant.

16.     Accordingly, Plaintiff sues Defendant seeking redress for their unlawful conduct, and asserting claims for: (i) negligence, (ii) negligence *per se*, (iii) breach of implied contract, and (iv) unjust enrichment.

## II.     PARTIES

17.     Plaintiff Nicole Church is and at all times mentioned herein was an individual citizen of Illinois, residing in the city of Colona.

18.     Defendant Lee Enterprises, is an Iowa-based for-profit corporation with its headquarters and principal place of business at 4600 E 53rd St. Davenport, Iowa 52807.[3]

---

[3]     Iowa          Secretary          of          State          --available          at:
https://sos.iowa.gov/search/business/summary.aspx?q=zTFp0yeZZhvKP9k0eAXrfWEZxnhCMFnOsQNmndyuBc4
afLXqGLqw3VCKxCzM85NnXv5Q5mXD92eFeGbMq3cRrSxgSDMGLCujr2UhQna_rt7o_WGyqr6bbDhffAy8gF

19.     Defendant can be served through its registered agent, Corporation Service Company at 505 5th Ave. Des Moines, Iowa 50309.[4]

### III.    JURISDICTION AND VENUE

20.     This Court has jurisdiction over Defendant pursuant to 28 U.S.C. § 1332(d) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a because Defendant maintains its principal place of business in the state of Iowa and conducts substantial business in the state of Iowa.

21.     Venue is proper in this Court pursuant to 18 U.S.C. § 1391(b)(1) because Defendant's principal place of business is in this District.

### IV.    <u>FACTUAL ALLEGATIONS</u>

*DEFENDANT'S BUSINESS*

22.     Defendant Lee Enterprises provides local news, information, and advertising in 72 markets and 25 states.[5]

23.     Plaintiff and Class Members are current and former employees (collectively "employees") of Defendant.

24.     In the ordinary course of business, Defendant's employees are encouraged and/or are mandated to provide the Defendant's (and Plaintiff did provide) Defendant with sensitive, personal, and private information, such as his or her:

      a.     name and Social Security numbers.[6]

---

gRV0w3IZwoIcGTS85qAHJS_yDjQnqtIETzjeb1w7rI8PgCU_A5wbSQeP2emdWZW7Uy77shBHbCmN     (last visited June 13, 2025)

[4] *Id*.

[5] Lee Enterprises, Inc., About – available at: Https://www.lee.net/about/  (last visited June 13, 2025).

[6] *See* Notice of Security Breach (Exhibit A).

25.     Defendant stored this Private Information in its information technology computer systems and servers, on information and belief located at its principal place of business in Davenport, Iowa.

26.     Defendant agreed to and undertook legal duties to maintain the Private Information entrusted to it by Plaintiff and Class Members safely, confidentially, and in compliance with all applicable laws.

27.     The employee information held by Defendant was held in its computer system and network included the Private Information of Plaintiff and Class Members.

*THE DATA BREACH*

28.     A Data Breach occurs when cyber criminals intend to access and steal Private Information that has not been adequately secured by a business entity like Defendant.

29.     On or about June 3, 2025, Defendant mailed Plaintiff a "Notice of Data Security Incident"[7] that stated in part:

> What Happened:
>
> On May 28, 2025, we learned that personal information of certain employees was potentially accessed without authorization. The unauthorized access was the result of a suspicious event we first learned of on or about February 3, 2025. We promptly initiated an investigation of the matter and engaged cybersecurity specialists to assist with the incident response. As a result, we determined that certain files may have been accessed or acquired without authorization on February 1, 2025. With the help of a third-party vendor, we undertook a comprehensive review and, on or about May 28, 2025, learned that some of your personal information was contained within the affected data set. Please note, we have no evidence of the misuse, or attempted misuse, of any potentially impacted information.
>
> What Information was Involved:
>
> The information may have included your name as well as your Social

---
[7] Exhibit A

Security number.

30.     Plaintiff's notice letters were dated June 3, 2025—nearly four months after Defendant became aware of the possibility that they experienced Data Breach, February 3, 2025. Within this notice, Defendant failed to state whether it was able to contain or end the cybersecurity threat, leaving victims to fear whether the Private Information that Lee Enterprises continues to maintain is secure. Defendant also failed to state how the breach itself occurred. All this information is vital to victims of a data breach, let alone a data breach of this magnitude due to the sensitivity and wide array of information compromised in this specific breach.

31.     Defendant had obligations created by contract, industry standards, state law, common law, and representations made to Class Members, to keep Class Members' Private Information confidential and to protect it from unauthorized access and disclosure.

32.     Plaintiff and Class Members provided their Private Information to Defendant with the reasonable expectation and mutual understanding that Defendant would comply with their obligations to keep such information confidential and secure from unauthorized access.

33.     Data breaches such as the one experienced by Defendant have become so notorious that the Federal Bureau of Investigation ("FBI") and U.S. Secret Service have issued a warning to potential targets, so they are aware of, and prepared for, a potential attack.

34.     Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendant's industry, including Defendant.

**DATA BREACHES ARE PREVENTABLE**

35.     Defendant failed to use reasonable security procedures and practices appropriate to the nature of the sensitive information they were maintaining for Plaintiff and Class Members, causing the exposure of Private Information, such as encrypting the information or deleting it when it is no longer needed.

36.    Defendant could have prevented this Data Breach by, among other things, properly encrypting or otherwise protecting their equipment and computer files containing Private Information.

37.    As explained by the Federal Bureau of Investigation, "[p]revention is the most effective defense against ransomware and it is critical to take precautions for protection."[8]

38.    To prevent and detect cyber-attacks and/or ransomware attacks, Defendant could and should have implemented, as recommended by the United States Government, the following measures:

- Implement an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.

- Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing.

- Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.

- Configure firewalls to block access to known malicious IP addresses.

- Patch operating systems, software, and firmware on devices. Consider using a centralized patch management system.

- Set anti-virus and anti-malware programs to conduct regular scans automatically.

- Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.

---

8 How to Protect Your Networks from RANSOMWARE, at 3, available at: https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view (last visited June 16, 2025)

- Configure access controls—including file, directory, and network share permissions—with least privilege in mind. If a user only needs to read specific files, the user should not have write access to those files, directories, or shares.

- Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.

- Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

- Consider disabling Remote Desktop protocol (RDP) if it is not being used.

- Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.

- Execute operating system environments or specific programs in a virtualized environment.

- Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.[9]

39.     To prevent and detect cyber-attacks or ransomware attacks, Defendant could and should have implemented, as recommended by the Microsoft Threat Protection Intelligence Team, the following measures:

**Secure Internet-Facing Assets**
-       Apply latest security updates
-       Use threat and vulnerability management
-       Perform regular audit; remove privileged credentials;

**Thoroughly investigate and remediate alerts**
-       Prioritize and treat commodity malware infections as potential full compromise;

**Include IT Pros in security discussions**
-       Ensure collaboration among [security operations], [security

---

[9] *Id.* at 3-4.

admins], and [information technology] admins to configure servers and other endpoints securely;

**Build credential hygiene**
-        Use [multifactor authentication] or [network level authentication] and use strong, randomized, just-in-time local admin passwords;

**Apply principle of least-privilege**
-        Monitor for adversarial activities
-        Hunt for brute force attempts
-        Monitor for cleanup of Event Logs
-        Analyze logon events;

**Harden infrastructure**
-        Use Windows Defender Firewall
-        Enable tamper protection
-        Enable cloud-delivered protection
-        Turn on attack surface reduction rules and [Antimalware Scan Interface] for Office[Visual Basic for Applications].[10]

40.    Given that Defendant was storing the Private Information of its current and former patients Defendant could and should have implemented all the above measures to prevent and detect cyberattacks.

41.    The occurrence of the Data Breach indicates that Defendant failed to adequately implement one or more of the above measures to prevent cyberattacks, resulting in the Data Breach and data thieves acquiring and accessing the Private Information of, upon information and belief, thousands to tens of thousands of individuals, including that of Plaintiff and Class Members.

*DEFENDANT ACQUIRES, COLLECTS & STORES EMPLOYEE' PRIVATE INFORMATION*

42.    Defendant acquires, collects, and stores a massive amount of Private Information on its current and former employees.

43.    As a condition of becoming an employee of Defendant, Defendant requires all

---

[10] *See* Human-operated ransomware attacks: A preventable disaster (Mar 5, 2020), *available at:* https://www.microsoft.com/security/blog/2020/03/05/human-operated-ransomware-attacks-a-preventable-disaster/ (last viewed June 16, 2025).

employees to entrust it with highly sensitive Private Information.

44.     By obtaining, collecting, and using Plaintiff's and Class Members' Private Information, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' Private Information from disclosure.

45.     Plaintiff and the Class Members have taken reasonable steps to maintain the confidentiality of their Private Information and would not have entrusted it to Defendant absent a promise to safeguard that information.

46.     Upon information and belief, while collecting Private Information from employees, including Plaintiff, Defendant promised to provide confidentiality and adequate security for their data through its applicable privacy policy and through other disclosures in compliance with statutory privacy requirements.

47.     Plaintiff and the Class Members relied on Defendant to keep their Private Information confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

*VALUE OF PRIVATE INFORMATION*

48.     The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[11]

49.     The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport

---

[11] 17 C.F.R. § 248.201 (2013).

number, employer or taxpayer identification number."[12]

50.    The PII of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials.[13] For example, Personal Information can be sold at a price ranging from $40 to $200.[14] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[15]

51.    Worse, the fraudulent activity resulting from the Data Breach may not come to light for years. There may be a time lag between when harm occurs versus when it is discovered, and between when Private Information is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[16]

52.    Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their Private Information.

***DEFENDANT FAILS TO COMPLY WITH FTC GUIDELINES***

53.    The Federal Trade Commission ("FTC") has promulgated many guides for

---

[12] *Id.*

[13] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, *available at*: https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last viewed June 16, 2025)

[14] *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, Dec. 6, 2017, *available at*: https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last viewed June 16, 2025)

[15] *In the Dark*, VPNOverview, 2019, *available at*: https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last viewed June 16, 2025)

[16] *Report to Congressional Requesters, GAO, at 29 (June 2007), available at:* https://www.gao.gov/assets/gao-07-737.pdf *(last visited* June 16, 2025)

businesses which show how important it is to implement reasonable data security practices. According to the FTC, the need for data security should shape all business decision-making.

54.    In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cyber-security guidelines for businesses. The guidelines note that businesses should protect the personal patient information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.[17]

55.    The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor incoming traffic for activity suggesting someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[18]

56.    The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

57.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect patient data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15

---

[17] Federal Trade Commission, *Protecting Personal Information: A Guide for Business* (2016), *available at* www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last visited June 16, 2025).
[18] *Id.*

U.S.C. § 45. Orders resulting from these actions also clarify the measures businesses must take to meet their data security obligations.

58.     Defendant failed to properly implement basic data security practices.

59.     Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to employees' PII constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

60.     Defendant was always fully aware of its obligation to protect the PII of its employees. Defendant was also aware of the significant repercussions that would result from its failure to do so.

### DEFENDANT FAILS TO COMPLY WITH INDUSTRY STANDARDS

61.     As shown above, experts studying cyber security routinely identify employers as being particularly vulnerable to cyberattacks because of the value of the PII which they collect and maintain for their employees.

62.     Several best practices have been identified that a minimum should be implemented by employers like Defendant, including, but not limited to, educating all employees; using strong passwords; creating multi-layer security, including firewalls, antivirus, and anti-malware software; encryption, making data unreadable without a key; using multi-factor authentication; protecting backup data; and limiting which employees can access sensitive data.

63.     Other best cybersecurity practices that are standard in the industry include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points.

64.    Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 2.0 (including, without limitation, PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

65.    These foregoing frameworks are existing and applicable industry standards for employers, and Defendant failed to comply with these accepted standards, thereby opening the door to and causing the Data Breach.

## V.    DEFENDANT'S BREACH

66.    Defendant breached its obligations to Plaintiff and Class Members and/or was otherwise negligent and reckless because it failed to properly maintain and safeguard its computer systems and its data. Defendant's unlawful conduct includes, but is not limited to, the following acts and/or omissions:

a.    Failing to maintain an adequate data security system to reduce the risk of data breaches and cyber-attacks;

b.    Failing to adequately protect current and former employees' Private Information;

c.    Failing to properly monitor its own data security systems for existing intrusions;

d.    Failing to train employees in the proper handling of emails, and to and maintain adequate email security practices;

e.    Failing to put into place proper procedures, software settings, and data security software protections to adequately protect against a blunt force intrusion;

f.    Failing to comply with FTC guidelines for cybersecurity, in violation of Section 5 of the FTC Act; and

g.    Failing to adhere to industry standards for cybersecurity.

67.    As the result of computer systems needing security upgrading, inadequate procedures for handling emails containing ransomware or other malignant computer code, and

inadequately trained employees who opened files containing the ransomware virus, Defendant negligently and unlawfully failed to safeguard Plaintiff's and Class Members' Private Information.

68.     Plaintiff and Class Members now face an increased risk of fraud and identity theft.

**PLAINTIFF AND THE CLASS MEMBERS HAVE AND WILL EXPERIENCE SUBSTANTIAL HARM**

69.     Plaintiff and members of the proposed Class have suffered injury from the misuse of their PII that can be directly traced to Defendant.

70.     The ramifications of Defendant's failure to keep Plaintiff's and the Class's PII secure are severe. Identity theft occurs when someone uses another's personal information such as that person's name, account number, Social Security number, driver's license number, date of birth, and/or other information, without permission, to commit fraud or other crimes. According to experts, one out of four data breach notification recipients become a victim of identity fraud.

71.     Because of Defendant's failures to prevent—and to timely detect—the Data Breach, Plaintiff and the proposed Class have suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. They have suffered or are at an increased risk of suffering:

a.     The loss of the opportunity to control how their PII is used;

b.     The diminution in value of their PII;

c.     The compromise and continuing publication of their PII;

d.     Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

e.     Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

f.     Delay in receipt of tax refund monies;

g.    Unauthorized use of stolen PII; and

h.    The continued risk to their PII, which remains in the possession of Defendant and is subject to further breaches so long as Defendant fails to undertake the appropriate measures to protect the PII in its possession.

72.    Stolen PII is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII can be worth up to $1,000.00 depending on the type of information obtained.

73.    The value of Plaintiff's and the proposed Class's PII on the black market is considerable. Stolen PII trades on the black market for years, and criminals often post stolen private information openly and directly on various "dark web" internet websites, making the information publicly available, for a substantial fee of course.

74.    It can take victims years to spot identity or PII theft, giving criminals plenty of time to abuse that information for money.

75.    One such example of criminals using PII for profit is the development of "Fullz" packages.

76.    Cyber-criminals can cross-reference two sources of PII to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

77.    The development of "Fullz" packages means that stolen PII from the Data Breach can easily be used to link and identify it to Plaintiff's and the proposed Class's phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PII stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam

telemarketers) over and over. That is exactly what is happening to Plaintiff and members of the proposed Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff's and other members of the proposed Class's stolen PII is being misused, and that such misuse is traceable to the Data Breach.

78.    According to the FBI's Internet Crime Complaint Center (IC3) 2019 Internet Crime Report, Internet-enabled crimes reached their highest number of complaints and dollar losses that year, resulting in more than $3.5 billion in losses to individuals and business victims, and the numbers are only rising.

79.    Further, according to the same report, "rapid reporting can help law enforcement stop fraudulent transactions before a victim loses the money for good" Defendant did not rapidly report to Plaintiff and the Class that their PII had been stolen.

80.    Victims of identity theft also often suffer embarrassment, blackmail, or harassment in person or online, and/or experience financial losses resulting from fraudulently opened accounts or misuse of existing accounts.

81.    In addition to out-of-pocket expenses that can exceed thousands of dollars and the emotional toll identity theft can take, some victims must spend a considerable time repairing the damage caused by the theft of their PII. Victims of new account identity theft will likely have to spend time correcting fraudulent information in their credit reports and continuously monitor their reports for future inaccuracies, close existing bank/credit accounts, open new ones, and dispute charges with creditors.

82.    Further complicating the issues faced by victims of identity theft, data thieves may wait years before attempting to use the stolen PII. To protect themselves, Plaintiff and the Class will need to remain vigilant against unauthorized data use for years or even decades to come.

83.    The Federal Trade Commission ("FTC") has also recognized that consumer data is a new and valuable form of currency. In an FTC roundtable presentation, former Commissioner Pamela Jones Harbour stated that "most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable. Data is currency."[19]

84.    The FTC has also issued many guidelines for businesses that highlight the importance of reasonable data security practices. The FTC has noted the need to factor data security into all business decision-making. According to the FTC, data security requires:

- encrypting information stored on computer networks;

- retaining payment card information only as long as necessary;

- properly disposing of personal information that is no longer needed;

- limiting administrative access to business systems;

- using industry-tested and accepted methods for securing data;

- monitoring activity on networks to uncover unapproved activity;

- verifying that privacy and security features function properly;

- testing for common vulnerabilities; and

- updating and patching third-party software.

85.    According to the FTC, unauthorized PII disclosures ravage consumers' finances, credit history and reputation, and can take time, money and patience to resolve the fallout.[20]

86.    The FTC treats the failure to employ reasonable and appropriate measures to

---

[19] Statement of FTC Commissioner Pamela Jones Harbour-Remarks Before FTC Exploring Privacy Roundtable, (Dec. 7, 2009).(last visited June 16, 2025)
[20] *See* Taking Charge, What to Do If Your Identity is Stolen, FTC, at 3 (2012), *available at* https://www.ojp.gov/ncjrs/virtual-library/abstracts/taking-charge-what-do-if-your-identity-stolen (last visited June 16, 2025 ).

protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5(a) of the FTC Act.

87.     Defendant's failure to properly notify Plaintiff and Class Members of the Data Breach exacerbated Plaintiff's and Class Members' injury by depriving them of the earliest ability to take appropriate measures to protect their PII and take other necessary steps to mitigate the harm caused by the Data Breach.

88.     Plaintiff and Class Members now face an increased risk of fraud and identity theft.

### DATA BREACHES PUT CONSUMERS AT AN INCREASED RISK OF FRAUD AND IDENTITY THEFT

89.     Data Breaches such as the one experienced by Defendant's employees are especially problematic because of the disruption they cause to the daily lives of victims affected by the attack.

90.     The United States Government Accountability Office released a report in 2007 regarding data breaches ("GAO Report") in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."[21]

91.     The FTC recommends that identity theft victims take several steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert (possibly an extended fraud alert that lasts for 7 years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.[22]

---

[21] U.S. Government Accountability Office, *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown* (June 2007), *available at* https://www.gao.gov/new.items/d07737.pdf (last visited June 16, 2025) ("GAO Report").
[22] Federal Trade Commission, *What To Do Right Away* (2024), *available at* https://www.identitytheft.gov/Steps (last visited June 16, 2025).

92.     Identity thieves use stolen personal information such as Social Security numbers for various crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.

93.     Identity thieves can also use Social Security numbers to obtain a driver's license or official identification card in the victim's name but with the thief's picture; use the victim's name and Social Security number to obtain government benefits; or file a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's Social Security number, rent a house or receive medical services in the victim's name, and may even give the victim's personal information to police during an arrest resulting in an arrest warrant being issued in the victim's name.

94.     Theft of Private Information is gravely serious. PII is a valuable property right.[23] Its value is axiomatic, considering the value of Big Data in corporate America and the consequences of cyber thefts include heavy prison sentences. Even this obvious risk to reward analysis illustrates beyond doubt that Private Information has considerable market value.

95.     It must also be noted there may be a substantial time lag—measured in years—between when harm occurs versus when it is discovered, and between when Private Information and/or financial information is stolen and when it is used. According to the U.S. Government Accountability Office, which studied data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

---

[23] *See, e.g.,* John T. Soma, et al, *Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets*, 15 Rich. J.L. & Tech. 11, at *3-4 (2009) ("PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citations omitted).

*See* GAO Report, at p. 29.

96.    Private Information and financial information are such valuable commodities to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber black market" for years.

97.    There is a strong probability that all the stolen information has been dumped on the black market or will be dumped on the black market, meaning Plaintiff and Class Members are at an increased risk of fraud and identity theft for many years into the future. Thus, Plaintiff and Class Members must vigilantly monitor their financial and medical accounts for many years to come.

98.    Sensitive Private Information can sell for as much as $363 per record according to the Infosec Institute.[24]

99.    PII is particularly valuable because criminals can use it to target victims with frauds and scams. Once PII is stolen, fraudulent use of that information and damage to victims may continue for years.

100.    For example, the Social Security Administration has warned that identity thieves can use an individual's Social Security number to apply for more credit lines.[25]

101.    Such fraud may go undetected until debt collection calls commence months, or even years, later. Stolen Social Security Numbers also make it possible for thieves to file fraudulent tax returns, file for unemployment benefits, or apply for a job using a false identity.[26]

102.     Each of these fraudulent activities is difficult to detect. An individual may not know that his or her Social Security Number was used to file for unemployment benefits until law

---

[24] Ashiq Ja, *Hackers Selling Healthcare Data in the Black Market*, InfoSec (July 27, 2015), *available at* https://resources.infosecinstitute.com/topic/hackers-selling-healthcare-data-in-the-black-market/ (last visited June 16, 2025).
[25] Social Security Administration, *Identity Theft and Your Social Security Number* (2018), *available at* https://www.ssa.gov/pubs/EN-05-10064.pdf (last visited June 16, 2025).
[26] *Id* at 4.

enforcement notifies the individual's employer of the suspected fraud. Fraudulent tax returns are typically discovered only when an individual's authentic tax return is rejected.

103.    It is also hard to change or cancel a stolen Social Security number.

104.    An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. Even then, a new Social Security number may not be effective, as "[t]he credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[27]

105.    In recent years, given the pervasiveness of data breach incidents, Defendant knew or should have known this and strengthened its data systems accordingly. Defendant was put on notice of the substantial and foreseeable risk of harm from a data breach, yet it failed to properly prepare for that risk.

## VI.    PLAINTIFF'S EXPERIENCE

106.    Plaintiff Nicole Church is and at all times mentioned herein was an individual citizen of Illinois, residing in the city of Colona.

107.    Plaintiff provided Defendant with her sensitive PII a to obtain employment.

108.    Plaintiff was employed by Defendant for 5 years as the surgeon general's registration/data entry clerk.

109.    Upon being offered employment by Defendant, Plaintiff provided her name, date of birth, email address, mailing address, Social Security numbers, financial information and driver's license information.

---

[27] Brian Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (February 9, 2015), *available at*   http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millions-worrying-about-identity-theft (last visited June 16, 2025).

110.    Plaintiff received notice of the Data Breach around June 3, 2025, informing her that her Private Information was part of Defendant's Data Breach (Exhibit A).

111.    Plaintiff has not received a data breach letter prior to the one she received from Defendant.

112.    Prior to receiving the data breach letter from Defendant Plaintiff rarely received spam notifications, but after the data breach her spam notifications have increased daily.

113.    On June 14, 2025, Plaintiff received alerts informing her of unauthorized login attempts to her CashApp account, Gmail account, and Instacart account.

114.    Plaintiff is careful about sharing her sensitive Private Information. Plaintiff has never knowingly transmitted unencrypted sensitive Private Information over the internet or any other unsecured source.

115.    Plaintiff stores any documents containing her sensitive Private Information in a safe and secure location or destroys the documents. Moreover, Plaintiff diligently chooses unique usernames and passwords for her sensitive online accounts.

116.    Had Plaintiff been aware that Defendant's computer systems were not secure, she would not have entrusted her personal data to Defendant.

117.    Because of the Data Breach, Defendant advised Plaintiff to take certain steps to protect her Private Information and otherwise mitigate her damages.

118.    Because of the Data Breach, Plaintiff spent time dealing with the consequences of the Data Breach, which includes time spent verifying the legitimacy of the Notice of Data Breach and self-monitoring her accounts to ensure no fraudulent activity has occurred. This time has been lost forever and cannot be recaptured. This time was spent at Defendant's direction by way of the Data Breach notice where Defendant recommended that Plaintiff mitigate her damages by, among

other things, monitoring her accounts for fraudulent activity.

119.    Even with the best response, the harm caused to Plaintiff cannot be undone.

120.    Plaintiff suffered actual injury in the form of damages to and diminution in the value of Plaintiff's Private Information—a form of intangible property that Plaintiff entrusted to Defendant, which was compromised in and because of the Data Breach. Plaintiff suffered lost time, annoyance, interference, and inconvenience because of the Data Breach and have anxiety and increased concerns for the loss of her privacy.

121.    Plaintiff has suffered imminent and impending injury arising from the exacerbated risk of fraud, identity theft, and misuse resulting from their Private Information being placed in the hands of criminals.

122.    Plaintiff has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains backed up in Defendant's possession, is protected, and safeguarded from future breaches

## VII.    PLAINTIFF AND CLASS MEMBERS DAMAGES

123.    To date, Defendant has done little to provide Plaintiff and Class Members with relief for the damages they have suffered because of the Data Breach, including, but not limited to, the costs and loss of time they incurred because of the Data Breach. Defendant has only offered inadequate identity monitoring services, despite Plaintiff and Class Members being at risk of identity theft and fraud for the remainder of their lifetimes.

124.    The credit monitoring offered to persons whose Private Information was compromised is wholly inadequate as it fails to provide for the fact that victims of data breaches and other unauthorized disclosures commonly face multiple years of ongoing identity theft and financial fraud. What's more, Defendant places the burden on Plaintiff and Class Members by

requiring them to expend time signing up for that service rather than automatically enrolling all victims of this Data Breach.

125.    Defendant's credit monitoring advice to Plaintiff and Class Members places the burden on Plaintiff and Class Members, rather than on Defendant, to investigate and protect themselves from Defendant's tortious acts resulting in the Data Breach.

126.    Plaintiff and Class Members have been damaged by the compromise and exfiltration of their Private Information in the Data Breach, and by the severe disruption to their lives as a direct and foreseeable consequence of this Data Breach.

127.    Plaintiff's Private Information was compromised and exfiltrated by cyber-criminals as a direct and proximate result of the Data Breach.

128.    Plaintiff and Class Members were damaged in that their Private Information is in the hands of cyber criminals.

129.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have been placed at an actual, present, immediate, and continuing increased risk of harm from fraud and identity theft.

130.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have been forced to expend time dealing with the effects of the Data Breach.

131.    Plaintiff and Class Members face substantial risk of out-of-pocket fraud losses such as loans opened in their names, medical services billed in their names, tax return fraud, utility bills opened in their names, credit card fraud, and similar identity theft.

132.    Plaintiff and Class Members face substantial risk of being targeted for future phishing, data intrusion, and other illegal schemes based on their Private Information as potential fraudsters could use that information to more effectively target such schemes to Plaintiff and Class

Members.

133.    Plaintiff and Class Members may also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

134.    Plaintiff and Class Members also suffered a loss of value of their Private Information when it was acquired by cyber thieves in the Data Breach. Many courts have recognized the propriety of loss of value damages in related cases.

135.    Plaintiff and Class Members have spent and will continue to spend significant amounts of time to monitor their financial accounts and records for misuse.

136.    Plaintiff and Class Members have suffered or will suffer actual injury as a direct result of the Data Breach. Many victims suffered ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach relating to:

     a.     Finding fraudulent charges;

     b.     Canceling and reissuing credit and debit cards;

     c.     Purchasing credit monitoring and identity theft prevention;

     d.     Addressing their inability to withdraw funds linked to compromised accounts;

     e.     Taking trips to banks and waiting in line to obtain funds held in limited accounts;

     f.     Placing "freezes" and "alerts" with credit reporting agencies;

     g.     Spending time on the phone with or at a financial institution to dispute fraudulent charges;

     h.     Contacting financial institutions and closing or modifying financial accounts;

     i.     Resetting automatic billing and payment instructions from

compromised credit and debit cards to new ones;

j.    Paying late fees and declined payment fees imposed because of failed automatic payments that were tied to compromised cards that had to be cancelled; and

k.    Closely reviewing and monitoring bank accounts and credit reports for unauthorized activity for years to come.

137.    Moreover, Plaintiff and Class Members have an interest in ensuring that their Private Information, which is believed to remain in the possession of Defendant, is protected from further breaches by implementing security measures and safeguards, including, but not limited to, making sure that the storage of data or documents containing personal and financial information is inaccessible online and that access to such data is password protected.

138.    Further, because of Defendant's conduct, Plaintiff and Class Members are forced to live with the anxiety that their Private Information —which contains the most intimate details about a person's life—may be disclosed to the entire world, thereby subjecting them to embarrassment and depriving them of any right to privacy whatsoever.

139.    As a direct and proximate result of Defendant's actions and inactions, Plaintiff and Class Members have suffered anxiety, emotional distress, and loss of privacy, and are at an increased risk of future harm.

## VIII.   CLASS REPRESENTATION ALLEGATIONS

140.    This action is brought and may be properly maintained as a class action pursuant to Federal Rule of Civil Procedure 23.

141.    Plaintiff brings this action on behalf of herself and on behalf of all other persons similarly situated.

142.    Plaintiff proposes the following Class definition, subject to amendment as appropriate:

**All persons whose Private Information was compromised because of the February 1, 2025 Data Breach (the "Class").**

143.    Excluded from the Class are Defendant's officers and directors, and any entity in which Defendant has a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendant. Excluded also from the Class are Members of the judiciary to whom this case is assigned, their families and Members of their staff.

144.    Plaintiff reserves the right to amend or modify the class definitions with greater specificity or division after having an opportunity to conduct discovery.

145.    This action satisfies the numerosity, commonality, typicality, and adequacy of requirements under Fed. R. Civ. P. 23.

146.    <u>Numerosity</u>.  In accordance with Fed. R. Civ. P. 23(a)(1), the Members of the Class are so numerous that joinder of all of them is impracticable. The exact number of Class Members is unknown to Plaintiff now, but Defendant has provided notice to the Office of the Maine Attorney General that the number includes at least 39,779 individuals.[28]

147.    <u>Commonality</u>. In satisfaction of Fed. R. Civ. P. 23(a)(2), there are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a.    Whether Defendant unlawfully used, maintained, lost, or disclosed Plaintiff's and Class Members' Private Information;

b.    Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c.    Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and

---

[28] *See the Office of the Maine Attorney General*

regulations;

d.      Whether Defendant's data security systems prior to and during the Data Breach adhered to industry standards;

e.      Whether Defendant owed a duty to Class Members to safeguard their Private Information;

f.      Whether Defendant breached its duty to Class Members to safeguard their Private Information;

g.      Whether Defendant knew or should have known that its data security systems and monitoring processes were deficient;

h.      Whether Plaintiff and Class Members suffered legally cognizable damages from Defendant's misconduct;

i.      Whether Defendant's conduct was negligent;

j.      Whether Defendant's conduct was *per se* negligent;

k.      Whether Defendant's acts, inactions, and practices complained of herein amount to acts of intrusion upon seclusion under the law;

l.      Whether Defendant was unjustly enriched;

m.      Whether Defendant failed to provide notice of the Data Breach promptly; and

n.      Whether Plaintiff and Class Members are entitled to damages, civil penalties, punitive damages, and/or injunctive relief.

148.    <u>Typicality</u>. Pursuant to Fed. R. Civ. P. 23(a)(3) Plaintiff's claims are typical of those of other Class Members because Plaintiff's Private Information, like that of every other Class member, was compromised in the Data Breach. Plaintiff's claims are typical of those of the other Class Members because, among other things, all Class Members were injured through the common misconduct of Defendant. Plaintiff is advancing the same claims and legal theories on behalf of herself and all other Class Members, and no defenses are unique to Plaintiff. Plaintiff's claims and those of Class Members arise from the same operative facts and are based on the same legal theories.

149.    <u>Adequacy of Representation</u>. As Fed. R. Civ. P. 23(a)(4) requires Plaintiff will fairly and adequately represent and protect the interests of the Members of the Class. Plaintiff's Counsel is competent and experienced in litigating class actions, including data privacy litigation of this kind.

150.    <u>Predominance</u>. Defendant has engaged in a common course of conduct toward Plaintiff and Class Members, in that all Plaintiff's and Class Members' data was stored on the same computer systems and unlawfully accessed in the same way. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

151.    <u>Superiority</u>. A Class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy.

152.    This class action is maintainable under Rule 23 because the prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

153.    This class action is maintainable under Rule 23 because Defendant has acted on grounds that apply generally to the Class as a whole, so that class certification, injunctive relief,

and corresponding declaratory relief are appropriate on a Class-wide basis.

154.    Likewise, issues that will arise in this case are appropriate for certification under Rule 23 because such issues are common to the Class, the resolution of which would advance matter and the parties' interests therein. Such issues include, but are not limited to:

a.      Whether Defendant failed to timely notify the public of the Data Breach;

b.      Whether Defendant owed a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, and safeguarding their Private Information;

c.      Whether Defendant's security measures to protect their data systems were reasonable considering best practices recommended by data security experts;

d.      Whether Defendant's failure to institute adequate protective security measures amounted to negligence;

e.      Whether Defendant failed to take commercially reasonable steps to safeguard consumer Private Information; and

f.      Whether adherence to FTC data security recommendations, and measures recommended by data security experts would have reasonably prevented the Data Breach.

155.    Finally, all members of the proposed Class are readily ascertainable. Defendant has access to Class Members' names and addresses affected by the Data Breach. Class Members have already been preliminarily identified and sent notice of the Data Breach by Defendant.

## IX.    <u>CAUSES OF ACTION</u>

### FIRST COUNT
### NEGLIGENCE
### (On Behalf of Plaintiff and All Class Members)

156.    Plaintiff re-alleges and incorporates the above allegations as if fully set forth herein.

157.    Plaintiff and the Class entrusted Defendant with their Private Information.

158.    Plaintiff and the Class entrusted their Private Information to Defendant on the premise and with the understanding that Defendant would safeguard their information, use their

PII for business purposes only, and/or not disclose their Private Information to unauthorized third parties.

159.    Defendant knows about the sensitivity of the Private Information and the types of harm that Plaintiff and the Class could and would suffer if the Private Information were wrongfully disclosed.

160.    Defendant knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the Private Information of Plaintiff and the Class involved an unreasonable risk of harm to Plaintiff and the Class, even if the harm occurred through the criminal acts of a third party.

161.    Defendant had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This duty includes, among other things, designing, maintaining, and testing Defendant's security protocols to ensure that the Private Information of Plaintiff and the Class Members in Defendant's possession was adequately secured and protected.

162.    Defendant also had a duty to exercise appropriate clearinghouse practices to remove Private Information it was no longer required to retain under regulations.

163.    Defendant also had a duty to have procedures in place to detect and prevent the improper access and misuse of the Private Information of Plaintiff and the Class.

164.    Defendant's duty to use reasonable security measures arose because of the special relationship that existed between Defendant and Plaintiff and the Class. That special relationship arose because Plaintiff and the Class entrusted Defendant with their confidential Private Information, a necessary part of obtaining services from Defendant.

165.    Defendant was subject to an "independent duty," untethered to any contract

between Defendant and Plaintiff or the Class.

166.    A breach of security, unauthorized access, and resulting injury to Plaintiff and the Class was reasonably foreseeable, particularly given Defendant's inadequate security practices. Plaintiff and the Class were the foreseeable and probable victims of any inadequate security practices and procedures. Defendant knew or should have known of the inherent risks in collecting and storing the Private Information of Plaintiff and the Class, the importance of providing adequate security of that Private Information, and the necessity for encrypting Private Information stored on Defendant's systems.

167.    Defendant's own conduct created a foreseeable risk of harm. to Plaintiff and the Class. Defendant's misconduct included, but was not limited to, its failure to take the steps and opportunities to prevent the Data Breach asset forth herein. Defendant's misconduct also included its decisions not to comply with industry standards for the safekeeping of the Private Information of Plaintiff and the Class, including basic encryption techniques freely available to Defendant.

168.    Plaintiff and the Class had no ability to protect their Private Information that was in, and possibly remains in, Defendant's possession.

169.    Defendant was able to protect against the harm suffered by Plaintiff and the Class because of the Data Breach. Defendant had and continues to have a duty to adequately disclose that the Private Information of Plaintiff and the Class within Defendant's possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiff and the Class to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their Private Info by third parties.

170.    Defendant had a duty to employ proper procedures to prevent the unauthorized

dissemination of the Private Information of Plaintiff and the Class.

171.    Defendant has admitted that the Private Information of Plaintiff and the Class was wrongfully lost and disclosed to unauthorized third persons because of the Data Breach.

172.    Defendant, through its actions and/or omissions, unlawfully breached its duties to Plaintiff and the Class by failing to implement industry protocols and exercise reasonable care in protecting and safeguarding the Private Information of Plaintiff and the Class during the time the Private Information was within Defendant's possession or control.

173.    Defendant improperly and inadequately safeguarded the Private Information of Plaintiff and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

174.    Defendant failed to heed industry warnings and alerts to provide adequate safeguards to protect the Private Information of Plaintiff and the Class in the face of increased risk of theft.

175.    Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and the Class by failing to have appropriate procedures in place to detect and prevent dissemination of Private Information.

176.    Defendant breached its duty to exercise appropriate clearinghouse practices by failing to remove Private Information it was no longer required to retain under regulations.

177.    Defendant, through its actions and/or omissions, unlawfully breached its duty to adequately and timely disclose to Plaintiff and the Class the existence and scope of the Data Breach.

178.    But for Defendant's wrongful and negligent breach of duties owed to Plaintiff and the Nationwide Class, the Private Information of Plaintiff and the Class would not have been

compromised.

179.    There is a close causal connection between Defendant's failure to implement security measures to protect the Private Information of Plaintiff and the Class and the harm, or risk of imminent harm, suffered by Plaintiff and the Nationwide Class. The Private Information of Plaintiff and Class Members was lost and accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such Private Information by adopting, implementing, and maintaining appropriate security measures.

180.    Additionally, Section 5 of the FTC Act prohibits "unfair ... practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect Private Information. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

181.    Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect Private Information and not complying with applicable industry standards, as detailed herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and the Class.

182.    Defendant's violation of Section 5 of the FTC Act constitutes negligence *per se.* Plaintiff and the Class are within the class of persons that the FTC Act was intended to protect. The harm attributable to the Data Breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, which, because of its failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

183.    As a direct and proximate result of Defendant's negligence and negligence *per se,* Plaintiff and the Class have suffered and will suffer injury, including but not limited to: (i) the loss of the opportunity of how their Private Information is used; (ii) the compromise, publication, and/or theft of their Private Information; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information; (iv) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the present and continuing consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (v) costs associated with placing freezes on credit reports; (vi) the continued risk to their Private Information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information of Plaintiff and the Class; and (vii) present and continuing costs in terms of time, effort, and money that has been and will be expended to prevent, detect, contest, and repair the effect of the Private Information compromised because of the Data Breach for the rest of the lives of Plaintiff and the Class.

184.    As a direct and proximate result of Defendant's negligence and negligence *per se,* Plaintiff and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

185.    Additionally, as a direct and proximate result of Defendant's negligence and negligence *per se,* Plaintiff and the Class have suffered and will suffer the continued risks of exposure of their Private Information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate

measures to protect the Private Information in its continued possession.

186.    As a direct and proximate result of Defendant's negligence and negligence *per se,* Plaintiff and the Class have a right to recover actual, consequential, and nominal damages.

### SECOND COUNT
### NEGLIGENCE PER SE
### (On Behalf of Plaintiff and All Class Members)

187.    Plaintiff re-alleges and incorporates the above allegations as if fully set forth herein.

188.    Under the Federal Trade Commission Act, 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Private Information.

189.    Defendant breached its duties to Plaintiff and Class Members under the Federal Trade Commission Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Private Information.

190.    Defendant breached its duties to Plaintiff and Class Members under Iowa law by failing to develop and implement policies and procedures necessary to protect Plaintiff's and Class Members' PII.

191.    Defendant's failure to comply with applicable laws and regulations constitutes negligence *per se*.

192.    But for Defendant's wrongful and negligent breach of its duties owed to Plaintiff and Class Members, Plaintiff and Class Members would not have been injured.

193.    The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Defendant's breach of its duties. Defendant knew or should have known that by failing to meet its duties, and that Defendant's breach would cause Plaintiff and Class Members to experience the foreseeable harms associated with the exposure of their Private Information.

194.    As a direct and proximate result of Defendant's negligent conduct, Plaintiff and

Class Members have suffered injury and are entitled to compensatory, consequential, and punitive damages in an amount to be proven at trial.

### THIRD COUNT
### BREACH OF IMPLIED CONTRACT
**(On Behalf of Plaintiff and All Class Members)**

195.    Plaintiff re-alleges and incorporate the above allegations as if fully set forth herein.

196.    When Plaintiff and Class Members provided their Private Information to Defendant in exchange for entering into an employment agreement, they entered implied contracts with Defendant under which Defendant agreed to reasonably protect such information.

197.    Defendant solicited, offered, and invited Class Members to provide their Private Information as part of Defendant's regular business practices. Plaintiff and Class Members accepted Defendant's offers and provided their Private Information to Defendant.

198.    In entering such implied contracts, Plaintiff and Class Members reasonably believed and expected that Defendant's data security practices complied with relevant federal and state laws and regulations, including HIPAA, and adhered to industry standards.

199.    Plaintiff and Class Members paid money to Defendant or provided labor to Defendant with the reasonable belief and expectation that Defendant would use part of its earnings to obtain adequate data security. Defendant failed to do so.

200.    Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of the implied contract between them and Defendant to keep their information reasonably secure.

201.    Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of its implied promise to monitor its computer systems and networks to ensure that they adopted reasonable data security measures.

202.    Plaintiff and Class Members fully and adequately performed their obligations under

the implied contracts with Defendant.

203.    Defendant breached its implied contracts with Class Members by failing to safeguard and protect their Private Information.

204.    As a direct and proximate result of Defendant's breach of the implied contracts, Class Members sustained damages as alleged here, including the loss of the benefit of the bargain.

205.    Plaintiff and Class Members are entitled to compensatory, consequential, and nominal damages suffered because of the Data Breach.

206.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, e.g., (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate credit monitoring to all Class Members.

**FOURTH COUNT**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and All Class Members)**

207.    Plaintiff re-alleges and incorporates the above allegations as if fully set forth herein.

208.    Plaintiff brings this claim individually and on behalf of all Class Members. This count is pled in the alternative to the breach of implied contract count above.

209.    Upon information and belief, Defendant funds its data security measures entirely from its general revenue, including payments made by or on behalf of Plaintiff and the Class Members.

210.    As such, a portion of the payments made by or on behalf of Plaintiff and the Class Members is to be used to provide a reasonable level of data security, and the portion of each payment made that is allocated to data security is known to Defendant.

211.    Plaintiff and Class Members conferred a monetary benefit on Defendant. Defendant's acceptance and storage of Plaintiff's and the other Class members' Private

Information created a fiduciary relationship between Defendant on the one hand, and Plaintiff and the other Class members, on the other hand. In light of this relationship, Defendant must act primarily for the benefit of its employees and/or customers, which includes safeguarding and protecting Plaintiff's and the other Class members' Private Information.

212.    Defendant knew that Plaintiff and Class Members conferred a benefit which Defendant accepted. Defendant profited from these transactions and used the Private Information of Plaintiff and Class Members for business purposes.

213.    Defendant enriched itself by saving the costs Defendant reasonably should have expended on data security measures to secure Plaintiff's and Class Members' Personal Information. Rather than providing a reasonable level of security that would have prevented the hacking incident, Defendant instead calculated to increase its own profits at the expense of Plaintiff and Class Members by using cheaper, ineffective security measures. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's decision to prioritize its own profits over the requisite security.

214.    Under the principles of equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiff and Class Members, because Defendant failed to implement appropriate data management and security measures that are mandated by industry standards.

215.    Defendant failed to secure Plaintiff's and Class Members' Private Information and thus did not provide full compensation for the benefit Plaintiff and Class Members provided.

216.    Defendant acquired the Private Information through inequitable means in that they failed to disclose the inadequate security practices alleged.

217.    If Plaintiff and Class Members knew that Defendant had not reasonably secured

their Private Information, they would not have agreed to provide their Private Information to Defendant.

218.    Plaintiff and Class Members have no adequate remedy at law.

219.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to:

a.    actual identity theft;

b.    the loss of the opportunity of how their Private Information is used;

c.    the compromise, publication, and/or theft of their Private Information;

d.    out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their Private Information;

e.    lost opportunity costs associated with efforts expended and the loss of productivity addressing and attempting to mitigate the consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft;

f.    the continued risk to their Private Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect Private Information in its continued possession; and

g.    future costs in terms of time, effort, and money to be expended to prevent, detect, contest, and repair the effect of the Private Information compromised because of the Data Breach for the rest of the lives of Plaintiff and Class Members.

220.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

221.    Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that they unjustly received from them. In the alternative, Defendant should be compelled to refund the amounts that Plaintiff and

Class Members overpaid for Defendant's services.

## X.    PRAYER FOR RELIEF

222.    WHEREFORE, Plaintiff, on behalf of herself and the Class described above seek

the following relief:

a.    For an Order certifying this action as a class action, defining the Class as requested herein, appointing Plaintiff and their counsel to represent the Class, and finding that Plaintiff are proper representatives of the Class requested herein;

b.    For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein relating to the misuse and/or disclosure of Plaintiff's and Class Members' Private Information, and from refusing to issue prompt, complete and accurate disclosures to Plaintiff and Class Members;

c.    For equitable relief compelling Defendant to use appropriate methods and policies related to consumer data collection, storage, and safety, and to disclose with specificity the type of Private Information compromised during the Data Breach;

d.    For equitable relief requiring restitution and disgorgement of the revenues wrongfully retained because of Defendant's wrongful conduct;

e.    Ordering Defendant to pay for not less than ten years of credit monitoring services for Plaintiff and the Class;

f.    For an award of actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined, as allowable by law;

g.    For an award of punitive damages, as allowable by law;

h.    For an award of attorneys' fees and costs, and any other expense, including expert witness fees;

i.    Pre- and post-judgment interest on any amounts awarded; and

j.    Any other relief that this court may deem just and proper.

## XI.    JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

Dated: June 19, 2025



Josh Christensen AT0011204
jchristensen@fightingforfairness.com
RSH LEGAL, P.C.
425 2nd St SE, Suite 1140
Cedar Rapids, IA 52401
Phone: (319) 365-9200
Fax: (319) 365-1114


Leigh S. Montgomery*
Texas Bar No. 24052214
lmontgomery@eksm.com
Service only: service@eksm.com
**EKSM, LLP**
4200 Montrose Blvd. Ste 200
Houston, Texas 77006
Phone: (888) 350-3931


**ATTORNEYS FOR PLAINTIFF AND THE PUTATIVE CLASS**

(* denotes *pro hac vice* forthcoming)

# EXHIBIT A

 **LEE ENTERPRISES**

P.O. Box 1907
Suwanee, GA 30024



59 2 20364 ***************AUTO**ALL FOR AADC 612
Nicole M Church
████████████████████

ⁱₗ·ₗᵢₗₗⁱₗₗₗₗⁱₕₗₗⁱ·ₗₗₗₗₗₗₗₗₗⁱₗₗₗₗₗⁱₗₗₗ|ₗ

---

Enrollment Code:  WBP4P7BFFK

To Enroll, Scan the QR Code Below:

SCAN ME

Or Visit:
https://app.idx.us/account-creation/protect

---

June 3, 2025

Re: Notice of Data Security Incident

Dear Nicole M Church:

Lee Enterprises ("Lee") is writing to notify you of a data security incident which may have affected your personal information. We take the privacy and security of all information within our possession very seriously. Please read this letter carefully as it contains information regarding the incident and information about steps that you can take to help protect your information.

**What Happened?**  On May 28, 2025, we learned that personal information of certain employees was potentially accessed without authorization. The unauthorized access was the result of a suspicious event we first learned of on or about February 3, 2025. We promptly initiated an investigation of the matter and engaged cybersecurity specialists to assist with the incident response. As a result, we determined that certain files may have been accessed or acquired without authorization on February 1, 2025. With the help of a third-party vendor, we undertook a comprehensive review and, on or about May 28, 2025, learned that some of your personal information was contained within the affected data set. Please note, we have no evidence of the misuse, or attempted misuse, of any potentially impacted information.

**What Information was Involved?**  The information may have included your name as well as your Social Security number.

**What Are We Doing?**  As soon as we discovered this incident, we took the steps described above and implemented measures to enhance security and minimize the risk of a similar incident occurring in the future. We also notified the Federal Bureau of Investigation and will cooperate with any resulting investigation and provide whatever cooperation may be necessary to hold the perpetrators accountable. In addition, we are offering identity theft protection services through IDX, the data breach and recovery services expert. IDX identity protection services include: 12 of credit and CyberScan monitoring, a $1,000,000 insurance reimbursement policy, and fully managed ID theft recovery services. With this protection, IDX will help you resolve issues if your identity is compromised. The deadline to enroll in these services is September 3, 2025.

**What You Can Do.**  You can follow the recommendations on the following page to help protect your personal information. You can also enroll in the complementary services offered to you through IDX by using the enrollment code provided above.